# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**PERRY H.,[1]**

             Plaintiff,

     v.

**ANDREW SAUL,**
**COMMISSIONER OF**
**SOCIAL SECURITY**,

             Defendant.

Civ. No. 1:19-cv-00050-AA

**OPINION & ORDER**

_____

AIKEN, District Judge:

      Plaintiff Perry H. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits.  The decision of the Commissioner is AFFIRMED and this case is DISMISSED.

## BACKGROUND

      On December 5, 2014, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income, both alleging disability beginning on July 1, 2006.  Tr. 15.[2]  The claims were denied initially and upon reconsideration.  *Id.*  At Plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on October 12, 2017.  *Id.*  On January 31, 2018, the ALJ issued a decision finding

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case.  Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] At the hearing, there was some discussion of moving the onset date to April 5, 2015, but Plaintiff never moved to amend the alleged onset date and so the Court has retained the original alleged onset date of July 1, 2006.  Tr. 15.

Plaintiff not disabled.  Tr. 32.  The Appeals Council denied Plaintiff's request for review,

making the ALJ's decision the final decision of the Commissioner.  Tr. 1.  This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining

whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*,

648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful
> activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or
> equal one of a list of specific impairments described in the regulations? (4) Is the
> claimant able to perform any work that he or she has done in the past? and (5) Are
> there significant numbers of jobs in the national economy that the claimant can
> perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at

953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir.

1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R.

§§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  If, however, the Commissioner proves that the claimant

is able to perform other work existing in significant numbers in the national economy, the claimant

is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis.  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date, July 1, 2006.  Tr. 17.  The ALJ determined Plaintiff had the following severe impairments: bilateral avascular necrosis of the hip; borderline intellectual functioning; learning disorder; alcohol abuse; and degenerative disc disease. Tr. 18.  The ALJ determined Plaintiff's impairments did not meet or equal a listed impairment. Tr. 19.

The ALJ determined Plaintiff had the RFC to perform less than the full range of light work with the following additional restrictions: he is limited to lifting, carrying, and upward pulling 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for at least 2 hours, and sit for 6 hours or more in an 8-hour workday, with normal breaks; he could not perform work that requires the operation of foot controls and should not perform a job that requires the use of his right or left lower extremity; he can occasionally climb ramps and stairs; he cannot climb ladders, ropes, or scaffolds; he can occasionally balance, kneel, crouch, or stoop; he cannot crawl; he is restricted from hazards, which is defined as dangerous machinery and unprotected heights; he is limited to understanding, remembering, and carrying out short, simple, and routine job instructions with GED general reasoning level of 2 or less as defined by the Dictionary of Occupational Titles; and he is limited to work that requires little or no reading.  Tr. 21.

The ALJ noted Plaintiff was 38 years old at the time of disability onset and has at least a high school education and is able to communicate in English.  Tr. 30.  The ALJ found that Plaintiff was unable to perform past relevant work.  *Id.*  The ALJ found that Plaintiff's RFC allowed him to perform work as a bagger, hand stuffer, or table worker.  Tr. 31.  Accordingly, the ALJ determined that Plaintiff was not disabled.  Tr. 32.

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

**DISCUSSION**

Plaintiff alleges the ALJ erred by (1) concluding the Plaintiff's bilateral avascular necrosis does not meet or equal a listed impairment; (2) failing to consider the combined effects of Plaintiff's avascular necrosis and borderline intellectual functioning in making the equivalency determination; (3) improperly discounting Plaintiff's subjective symptom testimony; and (4)

posing hypothetical questions to the vocational expert ("VE") that were not supported by the record.   Plaintiff raised additional assignments of error in his Reply brief.

## I.       Step Three

Plaintiff contends that the ALJ made two errors at step three of the sequential analysis. First, Plaintiff argues that the ALJ erred by finding that Plaintiff's bilateral avascular necrosis did not meet or equal Listing 1.02.   Second, Plaintiff contends the ALJ erred by finding that his combined impairments did not meet or equal Listing 12.05B.

At step three of the sequential analysis, "a claimant's impairment or combination of impairments is *medically* equivalent to a listed impairment—establishing a disability and ending the five-step inquiry—if the claimant's impairment or combination of impairments is at least equal in severity and duration to the criteria of any listed impairment." *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) (internal quotation marks and citation omitted, emphasis in original). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id.* at 531-32. "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered." *Kennedy*, 738 F.3d at 1176.

### A.  Listing 1.02

Plaintiff contends that his bilateral avascular necrosis should have met or medically equaled Listing 1.02.   Listing 1.02 covers major dysfunction of a joint due to any cause and is

characterized by "gross anatomical deformity" and "chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, boney destruction, or ankylosis of the affected joint(s)." 20 C.F.R. Pt. 404, Subpt. P., App. 1, at Listing 1.02. Regardless of the cause of musculoskeletal impairment, "functional loss for purposes of these listings is defined as the inability to ambulate effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment." 20 C.F.R. Pt. 404, Subpt. P., App. 1, at Listing 1.00B2a; *see also* Listing 1.02A (the major dysfunction of the joint must be accompanied by "Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.000B2b[.]").

> Inability to ambulate effectively means an extreme limitation of the ability to walk, i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . .
>
> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P., App. 1, at Listing 1.00B2b(1)-(2).

In the present case, the ALJ expressly considered Listing 1.02 and found that Plaintiff's impairments did not meet the requirements of the listing. Tr. 19. At the hearing, Plaintiff testified

that he does not require any assistive devices to walk.  Tr. 53-54; *see also* Tr. 273 (denying the use of any mobility aids).  Plaintiff's medical records often note normal gait.  Tr. 438-39 (normal gait and intact tandem walk with mild ataxia, no assistive device used or needed); Tr. 542 (normal gait and station, normal walking); Tr. 592 (psychologist noted that Plaintiff is ambulatory without assistance).  Plaintiff reported that he could walk "a long ways at times," without needing to stop and rest.  Tr. 272.  Plaintiff also reported that he goes hiking "when I can" and that he's "pretty good" at it.  Tr. 271.  These are clearly inconsistent with an inability to ambulate effectively.  On this record, the ALJ reasonably found that Plaintiff's bilateral avascular necrosis did not meet the requirements of Listing 1.02.

### B.  Listing 12.05B

Plaintiff contends that his bilateral avascular necrosis and his borderline intellectual function considered together would have met or medically equaled Listing 12.05B.  Listing 12.05B covers intellectual disorders and requires, in relevant part "A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence," as well as "Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two," areas of mental functioning including (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; or (4) adapt or manage oneself.  20 C.F.R. Pt. 404, Subpt. P., App. 1, at Listing 12.05B.

In the present case, Plaintiff argues that the pain from his bilateral avascular necrosis compromised his ability to concentrate, persist, or maintain pace and that, when considered in combination with the limitations of his borderline intellectual functioning, he met the requirements of Listing 12.05B.  The ALJ considered the limitations in Listing 12.05B and, with respect to

concentration, persistence, and pace, found that Plaintiff had only moderate limitations.  Tr. 20.

For the other areas of mental functioning, the ALJ found either moderate or mild limitations.  *Id.*

Michael Villaneueve, Psy.D. examined Plaintiff on July 19, 2017.  Tr. 590.  Dr. Villaneuve

found Plaintiff alert, oriented, and that he "tracked information adequately."  *Id.*  Reviewing

psychologist Joshua Boyd, Psy.D, assessed only moderates difficulties in maintaining

concentration, persistence, or pace and found that Plaintiff's impairments did not meet the

requirements of Listing 12.05.  Tr. 92.  Reviewing psychologist Bill Hennings, Ph.D., reached the

same conclusions.  Tr. 108.  Plaintiff has not challenged these opinions and the Ninth Circuit has

held that an ALJ can properly find that a plaintiff does not have a listed impairment based solely

on the opinions of reviewing psychologists.  *Taylor v. Astrue*, 386 F. App'x 629, 632 (9th Cir.

2010).  On this record, the ALJ properly concluded that Plaintiff did not meet the requirements for

Listing 12.05.

**II.    Subjective Symptom Testimony**

Plaintiff asserts that the ALJ erred by rejecting his subjective symptom testimony.  To

determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis.

20 C.F.R. § 416.929.  The first stage is a threshold test in which the claimant must produce

objective medical evidence of an underlying impairment that could reasonably be expected to

produce the symptoms alleged.  *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).  At the

second stage of the analysis, absent evidence of malingering, the ALJ must provide clear and

convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms.

*Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to

conclude that the ALJ did not arbitrarily discredit the claimant's testimony.  *Ghanim v. Colvin*,

763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, unexplained failure to follow treatment, or a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

In this case, Plaintiff testified that he is unable to work due to hip pain. Tr. 50-51. He testified that he can't turn quickly, lift heavy objects, and is unable to stand or sit for long periods. *Id.* Plaintiff testified that he cannot walk long distances and frequently needs to sit. Tr. 51. The pain also interferes with his ability to sleep. *Id.* Plaintiff estimated that he would be able to stand for 15 to 20 minutes before needing to sit or lie down and that he could sit for about 20 minutes before he would need to change position. Tr. 51-52. He testified that he needs to lie down between 6 and 8 times a day, but that he can only rest for 10 to 15 minutes before he needs to get up and walk. Tr. 52. He spends his days alternating between standing, walking, and lying down, but that he also climbs the stairs. *Id.* Plaintiff testified that he helps his fiancée "quite a bit." *Id.* Plaintiff testifies that he does not use any assistive devices to walk. Tr. 53. In terms of mental limitations, Plaintiff testified that he has problems with concentration and attention. Tr. 52. Plaintiff does not drive and has never held a driver's license. Tr. 54.

The ALJ gave several reasons for discounting Plaintiff's subjective symptom testimony. First, the ALJ noted that Plaintiff's activities of daily living were not consistent with Plaintiff's allegations concerning the intensity, persistency, and limiting effects of Plaintiff's impairments. Tr. 29-30. Consideration of daily activities is proper when they indicate activity or skills that are

transferable to the workplace, or when the activities contradict the claimant's other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Here, Plaintiff reported that he goes fishing, camping, hiking, and rides ATVs with others "[almost] all of the time when they ask me to go." Tr. 271. Plaintiff's girlfriend, Kathleen G., submitted a Third-Party Function Report in which she reported that Plaintiff helps with housecleaning and laundry, walks the dog, and goes outside "almost all the time." Tr. 276-77. She reported that he regularly goes to the park with their dog and that he enjoys camping, fishing, hiking, "hanging out with family and friends," and rock hunting and that he does these activities "pretty well." Tr. 279.[3] The ALJ reasonably concluded that these activities were not consistent with the level of impairment claimed by Plaintiff.

Next, the ALJ found that Plaintiff's course of medical treatment and use of medication were not consistent with his allegations concerning the intensity, persistency, and limiting effects of his symptoms. Tr. 26; *see also* Tr. 29 ("The medical evidence demonstrates minimal medical care and nothing to substantiate the levels of intensity and persistence the claimant's [sic] reports."). An ALJ may infer that a plaintiff's pain is "not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program." *Tommasetti*, 533 F.3d at 1039-40; *Molina*, 674 F.3d at 1113 (a plaintiff's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints," (internal quotation marks and citation omitted)). Evidence of medical treatment successfully relieving symptoms can also undermine a claim of disability. *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).

---

[3] Plaintiff points out that the ALJ erroneously listed "rock climbing" among Plaintiff's activities. Tr. 29. This appears to have been a scrivener's error based on Kathleen G.'s report that Plaintiff enjoys "rock finding." Tr. 279. The error is harmless, however, as the other activities listed by the ALJ support the ultimate determination.

In this case, Plaintiff was examined by Dr. Charles Versteeg in September 2015 for his hip condition. Tr. 467. Plaintiff told Dr. Versteeg that "he currently does not have much pain but it pops a lot when he twists and turns." *Id.* Plaintiff reported that he "takes an occasional Advil or Ibuprofen." *Id.* Dr. Versteeg assessed avascular necrosis "with minimal symptoms," and found that "at this time, no surgery would be indicated." *Id.* Plaintiff also reported that Tramadol helped his pain. Tr. 497-98; *see also* Tr. 506 ("Using tramadol is helping with pain from osteonecrosis. Pain averages 4-5/10 which keeps him functioning."). Based on this record, the Court concludes that the ALJ reasonably considered Plaintiff's course of treatment and the efficacy of his medication.

Finally, the ALJ found that the objective medical evidence did not support Plaintiff's subjective symptom testimony. Tr. 29. A lack of medical evidence is a valid consideration in the ALJ's credibility analysis, although it "cannot form the sole basis for discounting pain testimony." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). In this case, the ALJ noted that Plaintiff alleged that he could barely stand, but that the record often showed normal gait. Tr. 29; Tr. 438-39 (normal gait and intact tandem walk with mild ataxia, no assistive device used or needed); Tr. 542 (normal gait and station, normal walking); Tr. 592 (psychologist noted that Plaintiff is ambulatory without assistance, has adequate sitting endurance, and no overt pain behavior). On this record, the Court concludes that the ALJ reasonably considered the objective medical evidence in assessing Plaintiff's subjective symptom testimony. In sum, the Court concludes that the ALJ properly discounted Plaintiff's subjective symptom testimony.

### III.    VE Hypothetical

Plaintiff's final assignment of error is not entirely clear but appears to allege that the VE hypothetical did not include all Plaintiff's limitations based on Plaintiff's other assignments of

error.  An ALJ is entitled to rely on VE testimony when the hypothetical posed by the ALJ contained all the limitations the ALJ found credible and supported by substantial evidence in the record.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  In this case, the Court has already rejected Plaintiff's other assignments of error and concludes that the ALJ was entitled to rely on the VE's testimony.

## IV.    Issues Raised in the Reply

In his Reply, ECF No. 12, Plaintiff does not respond to the arguments presented by the Commissioner in the Response, ECF No.11.  Instead, Plaintiff raises new assignments of error—that Plaintiff is color blind and entirely unable to read and write and that the ALJ discounted Plaintiff's testimony on this issue and failed to address those limitations in the RFC.[4]

This argument was not properly presented "because all issues must be raised in the initial brief," and any issues not so raised are deemed waived.  *Anderson v. Colvin*, 223 F. Supp.3d 1108, 1131 (D. Or. 2016).  Accordingly, the Court declines to consider these new assignments of error.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this case is DISMISSED.

It is so ORDERED and DATED this  27th   day of May 2020.


 /s/Ann Aiken
ANN AIKEN
United States District Judge

---

[4] Of note, the ALJ restricted Plaintiff to jobs that require little or no reading in the RFC.  Tr. 21.